J-S14043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                             :        PENNSYLVANIA
                      :
         v.                      :
                      :
CALVIN NORRIS                    :
                      :
        Appellant        :      No. 1178 WDA 2021

Appeal from the PCRA Order Entered August 30, 2021
In the Court of Common Pleas of Mercer County Criminal Division at
No(s): CP-43-CR-0001475-2016

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                             :        PENNSYLVANIA
                      :
         v.                      :
                      :
CALVIN NORRIS                    :
                      :
        Appellant        :      No. 1179 WDA 2021

Appeal from the PCRA Order Entered August 30, 2021
In the Court of Common Pleas of Mercer County Criminal Division at
No(s): CP-43-CR-0001476-2016

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED: JULY 13, 2022**

Calvin Norris (Norris) appeals two related orders of the Court of
Common Pleas of Mercer County (PCRA court) denying his petitions for post-
conviction relief.  In 2016, Norris was implicated in the non-fatal shooting of
Kimberly Odem and the fatal shooting of Percey Godfrey which occurred

---

[*] Retired Senior Judge assigned to the Superior Court.

moments later the same night. Norris admitted that he shot those two individuals, but he claimed that he did so in self-defense.

Following a jury trial, Norris was found guilty of first-degree murder and aggravated assault. He was sentenced to a prison term of life as to the murder count and a consecutive term of 102 to 240 months as to the assault count. In Norris' post-conviction petition,[1] he argued that his trial counsel was ineffective in allowing the jury to consider the fact that the firearm he used was stolen as evidence of culpability. He also contended that counsel was ineffective in failing to advance theories of "imperfect" self-defense/voluntary manslaughter on his behalf. The PCRA court denied the petition in its entirety and we now affirm.

This Court has previously summarized the facts of the underlying case as follows:

> [Norris'] convictions arose from two shootings that occurred around 11:30 p.m. on August 14, 2016. Victim Kimberly Odem testified that she bought crack cocaine from [Norris] earlier on the day of the crimes. The crack turned out to be fake, and Odem and her boyfriend, deceased victim Percy Godfrey, had an altercation with [Norris] on the same evening, a few hours prior to the shootings. Surveillance video from 10:30 [p.m.] on the evening of the shootings depicted [Norris] entering a convenience store appearing as though he had been in an altercation.
>
> Just before she was shot on the northeast corner of New Castle Street in Sharon, Pennsylvania, Odem heard someone call her name. She turned to look, and [Norris] opened fire, hitting Odem

---

[1] The petition was filed pursuant to the Post-Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546 (PCRA).

in the jaw, left hand, and shoulder. Police recovered three nine-millimeter casings near the site of the Odem shooting. Odem had known [Norris] for approximately ten years, and she consistently identified him as the shooter. Odem was hospitalized for two months and, as of the time of trial, needed several additional surgeries.

No eyewitness observed the fatal altercation between [Norris] and Godfrey, but it took place very shortly after the shooting of Odem. Neighbors reported hearing two or three shots, a pause, and then an additional series of shots fired. Police found Godfrey's corpse roughly 150 feet from the site of the Odem shooting. Godfrey suffered bullet wounds in the leg and in the abdomen. **Both bullets entered Godfrey's body from behind**. The fatal shot entered Godfrey's left mid-back and exited the right front of his lower chest. The bullets were not fired from point blank range. **Police recovered eight spent nine-millimeter casings approximately 62 feet from Godfrey's body. [Norris] suffered a stab wound in the abdomen, and police found a knife in Godfrey's hand with [Norris'] blood on it. The convenience store surveillance footage from earlier in the evening did not depict [Norris] bleeding from the abdomen.**

Shortly after the shootings, [Norris] knocked on the door of his aunt, Regina Norris, who lived very near the crime scene. There, he asked his cousin, Alvin Hancock, Jr., to drive him to a hospital in Youngstown, Ohio, rather than Sharon Regional Hospital. [Norris] claimed he had been stabbed after having oral sex with another man's girlfriend. [Norris] and Hancock arrived at St. Elizabeth Hospital in Youngstown shortly after midnight on August 15, 2016. Surveillance video depicted [Norris] walking across a parking lot from Hancock's car to the hospital entrance with no obvious impairment.

Corporal Randolph Guy of the Pennsylvania State Police interviewed [Norris] in the hospital at 7:20 a.m. on the morning of August 15, 2016 after having interviewed family members of the shooting victims. Corporal Guy wore plain clothes and did not give [Norris] *Miranda* warnings. The interview lasted five to ten minutes. [Norris] claimed he was stabbed a few blocks from the hospital.

Police retrieved a nine-millimeter Luger handgun from underneath some other items on Norris' front porch. DNA testing revealed

that [Norris'] DNA was on the gun. Crime lab analysis established that the 11 nine-millimeter casings recovered from the scenes of the Odem and Godfrey shootings were fired from the Luger handgun.

***Commonwealth v. Norris***, No. 1604 WDA 2017 (Pa. Super. December 11, 2018) (unpublished memorandum) (emphasis added, footnotes omitted).

Along with the above-mentioned counts of murder and aggravated assault, the Commonwealth had also initially charged Norris with receiving stolen property[2] based on the prior reported theft of the firearm used in the shooting. At the close of the Commonwealth's case, the trial court granted a demurrer as to that count. However, by then, the jury had already heard evidence that the firearm was stolen. The jury was then advised at multiple stages by the trial court and the Commonwealth that it could consider that fact when determining if Norris acted in self-defense. ***See*** Trial Transcript, 7/17/2017, at pp. 32-33; Trial Transcript, 7/18/2017, at p. 62.

After Norris was found guilty, he appealed and the judgment of sentence was upheld. Norris then filed the PCRA petition before us in which he claimed in relevant part that trial counsel was ineffective in not seeking to exclude all evidence that the firearm he had used was stolen and then permitting the evidence to be used to establish his culpability in the shootings. Moreover, Norris argued that counsel erred in only presenting to the jury a claim of

---

[2] ***See*** 18 Pa.C.S. § 3925(a) (receiving stolen property).

complete self-defense, excluding alternative theories of voluntary manslaughter, a lesser offense of murder.[3] The PCRA court held an evidentiary hearing and Norris' trial counsel testified. *See* PCRA Hearing Transcript, 5/24/2021, at pp. 14-40.

The PCRA court denied relief and Norris timely appealed the order denying his PCRA petition.[4] In his appellate brief, he raises four issues for our consideration:

> 1. Whether the trial court erred in ruling that trial counsel was not ineffective for failing to file a pre-trial Habeas Corpus dealing with the receiving stolen property lodged against [Norris.]
>
> 2. Whether the PCRA court erred in ruling that trial counsel was not ineffective for failing to object to the Commonwealth's closing argument pertaining to the receiving stolen property and stolen gun[.]
>
> 3. Whether the PCRA Court erred in ruling that trial counsel was not ineffective for failing to object to the trial court's jury instructions in which the Court informed the jury that even though the receiving stolen property charge had been dismissed, the jury could still consider any evidence tending to show that the gun was proven to be stolen[.]
>
> 4. Whether the PCRA Court erred in ruling that trial counsel was not ineffective in failing to argue in her closing argument "imperfect self-defense" and involuntary manslaughter[.]

---

[3] The jury received a written instruction on voluntary manslaughter, and the instruction was given over Norris' personal objection. His present PCRA claim is that trial counsel was ineffective in not presenting this theory to the jury during closings.

[4] The PCRA court entered a 1925(a) opinion on August 30, 2021.

Appellant's Brief, at 4.

## I.

The four issues before us all involve claims of ineffective assistance of trial counsel. Counsel is presumed to be effective, and a petitioner for PCRA relief bears the burden of proving each element of ineffectiveness by a preponderance of the evidence. *See Commonwealth v. Postie*, 200 A.3d 1015, 1023 (Pa. Super. 2018). The three elements of an ineffectiveness claim are (1) that the underlying claim of error has arguable merit; (2) that counsel had no reasonable basis for the disputed aspect of her performance; and (3) that as a result of counsel's deficient performance, the petitioner suffered prejudice. *See Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987); *see also Commonwealth v. Spotz*, 896 A.2d 1191, 1210 (Pa. 2006) (same). In the context of a PCRA claim, "prejudice" means that, "absent counsel's conduct, there is a reasonable probability [that] the outcome of the proceedings would have been different." *Commonwealth v. Velasquez*, 216 A.3d 1146, 1149 (Pa. Super. 2019) (citation omitted).

Failing to satisfy any of these prongs is fatal to an ineffectiveness claim. *Commonwealth v. Sneed*, 45 A.3d 1096, 1106 (Pa. 2012). Additionally, counsel cannot be deemed ineffective for failing to raise claims that are meritless. *See Spotz*, 896 A.2d at 1210.

**A.**

Norris' first claim is that trial counsel was ineffective in not seeking to have the charge of possession of stolen property dismissed prior to trial. He argues that even though the charge was later dismissed at the close of the evidence, it was still prejudicial for the jury to know the firearm was stolen when considering the remaining counts. We find no merit in this claim.

The offense of receiving stolen property requires proof that the defendant "(1) intentionally acquir[ed] possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." ***Commonwealth v. Robinson***, 128 A.3d 261, 264 (Pa. Super. 2015); ***see also*** 18 Pa.C.S. § 3925(a). The knowledge element of the crime may be proven circumstantially. ***See Commonwealth v. Gomez***, 224 A.3d 1095 (Pa. Super. 2019). The fact-finder may infer such knowledge if evidence is offered showing that the property was recently stolen. ***See id***.

"A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case." ***Commonwealth v. Carroll***, 936 A.2d 1148, 1152 (Pa. Super. 2007) (abrogation on other grounds recognized in ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 n.5 (Pa. Super. 2016)). A *prima facie* case is a fairly low evidentiary bar that is akin to the probable cause standard. ***See generally Commonwealth v. Talley***, 265 A.3d 485, 517-18 (Pa. 2021); ***see***

*also id.* at 517 (citing *Commonwealth v. Ricker*, 170 A.3d 494, 503 (Pa. 2017) (*per curiam*) (Saylor, C.J., concurring) ("[T]he sole function of the jurist presiding at a preliminary hearing is to determine whether probable cause exists to require an accused to stand trial on the charges contained in the complaint.")).

A *prima facie* case exists if the Commonwealth can "produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein." *Carroll*, 936 A.2d at 1152. The Commonwealth may meet its burden by relying on "the evidence presented at the preliminary hearing," and "a court must view the evidence and its reasonable inferences in the light most favorable to the Commonwealth." *Id.*

At Norris' preliminary hearing on September 2, 2016, there clearly was *prima facia* evidence that Norris committed the offense of receiving stolen property. A police officer testified that the weapon used in the subject shootings was recovered at the home of Norris' aunt (Regina Norris) within hours of the incident. *See* Transcript of Preliminary Hearing, 9/2/2016, at p. 17. The weapon had been reported as stolen on June 27, 2016, and the named victim was Devin Braden, who had no other connection with this case. *Id.* at pp. 26-27. Norris had been identified as the shooter by the surviving victim, Kimberly Odem. *Id.* at p. 8. Regina Norris testified that Norris had arrived at her home at about 3:35 a.m. hours after the shooting, urging her to take him to the hospital for treatment of a stab wound; she had no

- 8 -

knowledge of the firearm discovered by police at her residence later that night. *Id.* at pp. 22-23.

There is no legal merit to Norris' underlying claim because a pretrial *habeas corpus* motion to quash the charge would have certainly been denied. Viewing the evidence in the light favorable to the Commonwealth, all of the elements of possession of stolen property could be met. Since the chance of the trial court granting such a motion at that stage was nil, trial counsel had a reasonable basis for not filing one, and counsel cannot be found ineffective by declining to make a frivolous filing. Regardless, counsel's inaction could not have prejudiced Norris because he was ultimately not found guilty of that count.[5]

**B.**

**1.**

Norris' second and third claims may be condensed into the single issue of whether trial counsel was ineffective in allowing the jury to be advised that it could consider evidence of the weapon being stolen when deliberating on the murder and aggravated assault counts. Although Norris is correct that this evidence should have been excluded for lack of relevance and the danger

---

[5] The asserted prejudice Norris alludes to in this first claim overlaps with grounds contained elsewhere in his brief – those in which he argues that the jury should not have been directed to consider evidence of the stolen firearm when entering its verdict on the murder and aggravated assault counts. These separate issues are addressed in turn below.

of undue prejudice, we find that ultimately the error was not prejudicial for PCRA purposes in light of other, properly admitted evidence that Norris was in no imminent danger of physical harm at the time he shot the victims.

At trial, it was undisputed that Norris received a knife wound to his abdomen on the evening of but sometime prior to the shooting of the two victims and that the firearm he used was stolen property. The Commonwealth, in its closing argument, ended the summary of the evidence and preceded its discussion of self-defense by emphasizing that the weapon was stolen:

> **And lastly, before we go into the defense's defense which we touched upon briefly, let's talk about the stolen gun.** No, we weren't able to show that he knew or should have known that the gun was stolen, so that is not going to be in front of you. I told you there would be receiving stolen property. It was determined there was not enough [evidence] for that, but we do know the gun was stolen. We heard testimony about that.
>
> This is America. We have a right to carry a gun. We have a right to have guns to protect ourselves, and we all deserve that right, but we buy those guns legally. We buy those guns from the stores that are to sell them or any appropriate measures. We don't buy stolen guns. **You know what stolen guns are used for? Committing crimes, drug dealing, robbing, murder; that is the purpose of a stolen gun. It is not for self protection. It is to commit a crime. To go hunting on the streets**.

Trial Transcript, 7/17/2017, at pp. 32-33. Then again, in its rebuttal opening, the Commonwealth repeated those same themes: "Leaves the state, running, lying, hiding, guilty conscience. DNA, [gunshot residue], stolen gun, matching casings." Trial Transcript, 7/18/2017, at p. 21.

The next day, the trial court reaffirmed to the jury that it would be permitted to consider Norris' use of a stolen firearm. However, the trial court offered little clarification as to the purposes for which that evidence could be considered:

> I would like to tell you at the beginning though, that the receiving stolen property charge that was on each case as to the gun has been removed by the Court. The reason for that is that the Court found that there was not enough evidence to give that charge to you on one element, and that is whether or not [Norris] knew, or had reason to know, the gun was stolen. So those charges are off the table now. So it won't be on the verdict slip. **That does not mean that you can't consider or should not consider any evidence tending to show that the gun was proven to be stolen**.

Trial Transcript, 7/18/2017, at p. 62 (emphasis added). Trial counsel did not make any objections to any of the above references to the stolen weapon.

Despite the instructions given to the jury by the prosecution and the trial court, whether or not Norris was using a stolen firearm at the time of the shootings had no logical bearing on whether his use of force was justified. The legality of weapon possession is not an element of first-degree murder or aggravated assault. It could not even be proven whether Norris' possession of the firearm was illegal.

The Commonwealth simply used the fact that the gun was stolen as evidence that Norris had a bad character or a propensity to commit criminal acts. Using evidence in this manner is prohibited, *see* Pa.R.E. 404(b)(1), because "the presumed effect of such evidence is to predispose the minds of the juror to believe the accused guilty, and thus effectually strip him of the

- 11 -

presumption of innocence[.]" ***Commonwealth v. Spruill***, 391 A.2d 1048, 1049-50 (Pa. 1978) (quotations and citations omitted). Because of the inherent risk of this undue prejudice, evidence of bad character and prior bad acts is generally excludable unless a limited exception is established by the proponent. ***See generally*** Pa.R.E. 404.[6]

**2.**

The Commonwealth nevertheless proposes in its brief that the firearm being stolen was relevant because it would "dispel the possibility of another shooter" and exclude "the registered owner as a suspect given the stolen nature of the gun." Appellee's Brief, at 15-16. The Commonwealth suggests further that the evidence of the firearm being stolen was relevant to prove that Norris had no right to stand his ground and use deadly force, even if done in self-defense. ***See*** 18 Pa.C.S. § 505(2.3) (providing that an actor may stand his ground and use force in self-defense if he is not "engaged in criminal

---

[6] The limited exceptions to the prohibition on propensity evidence are that it may be offered for the limited purposes of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). The Commonwealth did not even purport to use the disputed evidence in this case for any of those permissible purposes. Had the Commonwealth sought to use the evidence for one of the enumerated exceptions, it would have had to comport with the notice provisions of Rule 404, which it did not do here. Another predicate for the admission of propensity evidence is that its probative value must outweigh its prejudicial effect, ***see*** Pa.R.E. 404(b)(3), and no such showing was made in this case.

activity, . . . not in illegal possession of a firearm and [not] attacked in any place where [he] would have a duty to retreat[.]").

The Commonwealth's arguments in this regard are nonsensical. First, Norris admitted that he was the shooter, and his defense was that the use of deadly force was justified by the initial aggression of Odem and Godfrey. Evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *See* Pa.R.E. 401. Norris' admission and his asserted defense prevented the identity of the shooter from being a fact of consequence, so any evidence ruling out other individuals as the perpetrator would obviously be irrelevant and inadmissible upon timely objection. *See* Pa.R.E. 401.

**3.**

Second, the gun being stolen was not probative as to Norris' self-defense claim as the Commonwealth contends. A defendant may be absolved of criminal liability for death or injury arising from the defendant's use of force if:

> 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly [force] to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat. 18 Pa.C.S. § 505(b)(2)[.]

*Commonwealth v. Jones*, 271 A.3d 452, 458-59 (Pa. Super. 2021) (some citations omitted). "Where the defendant has introduced evidence of self-

defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three elements is absent." *Id.*

The statute now referred to by the Commonwealth, 18 Pa.C.S. § 505(2.3), codifies the "stand your ground" law. Under this provision, a defendant may be held criminally liable for a homicide offense if the Commonwealth can prove that the defendant had a duty to retreat. ***See id.*** A duty to retreat under this statute may be established by several means, including, but not limited to, the defendant's illegal possession of a firearm:

> An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat under paragraph (2)(ii) has no duty to retreat and has the right to stand his ground and use force, including deadly force, if:
>
> > (i) the actor has a right to be in the place where he was attacked;
> >
> > (ii) the actor believes it is immediately necessary to do so to protect himself against death, serious bodily injury, kidnapping or sexual intercourse by force or threat; and
> >
> > (iii) the person against whom the force is used displays or otherwise uses:
> >
> > > (A) a firearm or replica of a firearm as defined in 42 Pa.C.S. § 9712 (relating to sentences for offenses committed with firearms); or
> > >
> > > (B) any other weapon readily or apparently capable of lethal use.

18 Pa.C.S. § 505(2.3).

- 14 -

In the present case, prior to jury deliberations, the trial court dismissed the count of receiving stolen property because it found, as a matter of law, that the elements of the offense could not be proven beyond a reasonable doubt. Merely possessing a stolen firearm is not in itself a criminal act absent additional elements, such as guilty knowledge or *mens rea*. At trial, no other offenses were proven establishing the illegality of Norris' weapon possession, and the Commonwealth does not assert in this appeal that the evidence would have been sufficient to do so. The Commonwealth identifies no evidence or even a cogent hypothesis to support its claim that stolen firearms are less frequently used in self-defense than firearms which are not stolen.

It is also significant that during its closing argument, the Commonwealth did not refer at all to the firearm being stolen as a ground on which the jury could find that Norris had a duty to retreat. Rather, as to the duty to retreat, the Commonwealth only argued that Norris had no right to seek out the victims after he was stabbed: "Once that happens and the threat to [Norris] has been removed, that meets element three, which is failure to retreat or avoid[.]" Trial Transcript, 7/18/2017, at p. 36. The jury was never even instructed on the "stand your ground law" or how evidence of a stolen firearm could be probative in that context. *See* 18 Pa.C.S. § 505(2.3).

Instead, the Commonwealth made a pure propensity argument by telling the jury it could correlate possession of a stolen firearm with intent to commit violent crimes:

You know what stolen guns are used for? Committing crimes, drug dealing, robbing, murder; that is the purpose of a stolen gun. It is not for self protection. It is to commit a crime. To go hunting on the streets.

Trial Transcript, 7/17/2017, at pp. 32-33.

Accordingly, the Commonwealth did not rely on the firearm being stolen for the reasons it now claims made the evidence relevant at trial. The record reflects, rather, that the jury was encouraged to infer Norris' bad character and a propensity for violence based on his mere possession of a stolen firearm, despite that his possession was not proven to be illegal. The jury was then asked to infer further that since Norris was carrying a stolen weapon, that he could not have been acting in self-defense when the weapon was discharged. Propensity arguments like this one are prohibited because of the danger that the jury may rely on it to convict a defendant for having a bad character, but without making a determination that the charges were proven beyond a reasonable doubt. *See Commonwealth v. Newman*, 598 A.2d 275, 278 (Pa. 1991); *see also* Pa.R.E. 404(a)-(b).

Trial counsel, therefore, erred in failing to object to prosecutorial comments advising the jury that it could consider the fact that the firearm was stolen; trial counsel likewise erred in failing to object to the trial court's vague instruction to the jury that this evidence could be considered for some unstated purpose. The arguments and instructions given with respect to this evidence were objectionable, and counsel had no reasonable basis in allowing the possibility that the jury would consider irrelevant evidence of the

commission of a prior bad act when determining if Norris discharged the weapon in self-defense.[7]

Having discussed the underlying legal error and reasonable basis prongs of Norris' ineffectiveness claim, we must now evaluate whether Norris was prejudiced by counsel's deficient performance. The test for prejudice in the context of a PCRA claim is whether there was a "reasonable probability" that Norris would have been found guilty of first-degree murder and aggravated assault had the jury been advised to disregard the fact that Norris possessed a stolen weapon. *See Commonwealth v. Hickman*, 799 A.2d 136 (Pa. Super. 2002). The "'reasonable probability' test is not a stringent one." *Id.* It is even "less demanding than [the] preponderance standard." *Id.* (citing *Nix v. Whiteside*, 475 U.S. 157, 175 (1986)).

A propensity argument involving irrelevant evidence of a stolen firearm may potentially constitute a violation of the accused's constitutional right to due process and a fair trial, but these improper arguments may be deemed harmless where there is "overwhelming evidence" of a defendant's guilt which

_____

[7] At the evidentiary hearing before the PCRA court, Norris' trial counsel stated that whether the gun was stolen had no bearing on the issue of self-defense. *See* PCRA Hearing Transcript, 5/24/2021, at p. 22. However, she testified that she did not object to the prosecutorial comments or the trial court's instruction out of fear that such objections would only highlight the issue for the jury. *See id*. at pp. 21-23. Trial counsel also opined that the Commonwealth's reference to the gun being stolen was not improper because corroborative evidence was introduced to that effect. *See id*. We find counsel's reasons for declining to object to be entirely baseless.

had been properly admitted. ***See generally Commonwealth v. Williams***, 950 A.2d 294, 319-20 (Pa. 2008) (noting potential prejudice caused by propensity arguments but holding that the error was harmless due to overwhelming evidence of the defendant's guilt).[8]

Upon a close review of the record and the properly admitted evidence adduced at trial, we find that there was not a reasonable probability of a better trial outcome for Norris had trial counsel objected to the propensity arguments and the trial court's instructions. The parties agreed that on the evening of the shooting, Norris had sold fake crack cocaine to Odem and Godfrey, and in retaliation, Godfrey stabbed Norris in his abdomen. This stabbing may have taken place as much as an hour before the shooting (as the Commonwealth contends), or just moments before the shooting occurred (as Norris contends). The parties agree that Godfrey's possession of a bloody knife was sufficient to shift the burden of proof to the Commonwealth to prove beyond a reasonable doubt that Norris did not shoot the victims in self-defense.

The Commonwealth carried that burden despite its improper propensity argument. A surveillance video showed Norris walking into a convenience store at about 10:05 p.m. He appeared disheveled and he had blood on his

---

[8] The prosecution had argued in **Williams** that the defendant was more likely to have committed the subject robbery and murder because prior to those crimes, he "allegedly stole a handgun." 950 A.2d at 318. The Court noted that this argument would have entitled the defendant to a cautionary instruction "to protect against impermissible inferences of propensity." **Id.**

face, but the video did not make it clear whether he had yet been stabbed. *See* Trial Transcript, 7/12/2017, at p. 132.

Odem was shot about an hour later that evening while walking on New Castle Avenue in Philadelphia. She testified that just before the shooting, she heard Norris call her name and laugh. When she turned around to see him, Norris opened fire, striking her three times – in the jaw, hand and shoulder. Odem was severely injured, and when emergency responders came to her aid, no weapons were found on her person. She could remember very little of what transpired after she was shot.

Within moments of the attack on Odem, gunfire broke out in a nearby alley. Another eight rounds were discharged, and of those, Godfrey was struck twice, causing fatal injuries. A number of witnesses heard the shooting, but none saw how it had broken out. For that reason, this aspect of the case had to be resolved in large part by forensic evidence.

Shell casings recovered at the scene of the Godfrey shooting proved that Norris opened fire on Godfrey about 150 feet away from where Odem was shot. Godfrey's body, in turn, was found another 62 feet away from those shell casings. *See* Trial Transcript, 7/13/2017, at pp. 83, 90. The entry wounds Godfrey sustained conclusively established that he had his back to Norris at the time he was shot. *See id.*

Immediately after the shooting, Norris went to his aunt's home, hid the firearm there, and soon received treatment for his stab wound at a hospital,

where he gave an alias. When police interviewed Norris at the hospital, he lied about his earlier whereabouts and about how he had received his injury, as if to provide an alibi for the shooting. He also lied to his own family about how his injuries were caused. Norris' blood alcohol level at the time he underwent surgery for the stab wound was 0.228, almost three times the legal limit. *See* Trial Transcript, 7/18/2017, at p. 12.

The defense had contended that Godfrey was the initial aggressor, and that Norris shot him and Odem almost immediately after Godfrey had stabbed him with a knife. In the defense's version of events, Godfrey attacked Norris with a knife in a dark alley off New Castle Avenue, and Norris drew his weapon to defend himself against assailants who he could not clearly see. The defense conceded that Norris was intoxicated at the time, using that fact to argue that it affected his aim which caused him to strike Odem accidentally with the first volley of three rounds. From there, Norris ran away down the alley and Godfrey chased him.

Again, due to poor lighting, his stab wound and his intoxication, Norris' aim was poor when he drew his weapon against Godfrey, explaining why only two of the eight rounds struck him.[9] Godfrey abandoned his attack when the first shots were fired, but he was hit just as he decided to run away. While

---

[9] Four to five of the eight rounds struck the ground because the firearm was pointed toward the ground when it was discharged. *See* Trial Transcript, 7/12/2017, at pp. 152, 165.

still clasping the knife he used to attack Norris, Godfrey continued running some distance until he succumbed to his wounds, explaining why Godfrey's body was found so far away from the shell casings corresponding to the eight rounds Norris fired at him.[10]

The Commonwealth's evidence of guilt was compelling, and much of it was unexplained by the defense's interpretation of the evidence. In particular, Norris' decisions not to report the incident to police, to flee the area, to hide the weapon, and give a false story to police all bolster the Commonwealth's contention that Norris behaved consistently with having consciousness of guilt. Norris' intoxication would have also likely impaired his decision making and self-control.

It is also not plausible that Godfrey would have chased Norris down a dark alley for 150 feet after he had just witnessed Odem being shot. Godfrey knew that he only possessed a knife and that Norris was armed with a gun. Godfrey would have had no reason to pursue Norris, taking a knife to a gunfight, and it would had made no sense for him to wait for Norris to open fire before running away because he had already known from the outset that Norris had the ability and intent to shoot him. The Commonwealth's evidence

_____

[10] The forensic evidence was inconclusive as to the distance the bullets travelled before striking Godfrey. A forensic pathologist testified that, "beyond a distance a foot-and-a-half or two feet, two feet looks the same as twenty feet, looks the same as two hundred feet." Trial Transcript, 7/13/2027, at p. 33.

was overwhelming, and there was no reasonable probability that Norris would have had a better outcome at trial but for his counsel's deficient performance.

Thus, we conclude that Norris can satisfy the first two prongs of his subject ineffectiveness claims, but not the third. This failure to establish the prejudice prong of his ineffectiveness claim precludes him from being entitled to PCRA relief. **See Commonwealth v. Crispell**, 193 A.3d 919, 936-38 (Pa. 2018) (finding that counsel erred in not seeking to exclude evidence about prior bad acts, but holding that PCRA petitioner had not demonstrated prejudice from the admission of the evidence or the lack of a cautionary jury instruction); **Commonwealth v. Hutchinson**, 25 A.3d 277, 319-31 (Pa. 2011) (same). The PCRA court's denial of Norris' second and third claims of ineffective assistance of counsel must, therefore, be upheld.

### C.

Finally, Norris' fourth claim is that his trial counsel was ineffective in failing to argue to the jury in closing that, even if it found that he was not completely justified in his use of deadly force, he could still be found guilty of the lesser offense of voluntary manslaughter.

An intentional killing generally constitutes first-degree murder. **See** 18 Pa.C.S. § 2502(a). The lesser offense of voluntary manslaughter is defined as "an intentional killing . . . committed as a result of an unreasonable belief in the need for deadly force." **Commonwealth v. Washington**, 692 A.2d 1024, 1029 (Pa. 1997); 18 Pa.C.S. § 2503(b); **see also Commonwealth v.**

- 22 -

*Truong*, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*) ("imperfect self-defense" exists when the defendant "actually, but unreasonably, believed that deadly force was necessary . . . . A successful claim of imperfect self-defense reduces murder to voluntary manslaughter.").

In addition to an actual but unreasonable belief in the need for deadly force, voluntary manslaughter may be shown where the defendant kills another while "acting under a sudden and intense passion resulting from serious provocation by" the victim. 18 Pa.C.S. § 2503(a)(1). "If any of these be wanting — if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder." *Commonwealth v. Sanchez*, 82 A.3d 943, 979 (Pa. 2013) (citation and internal quotation marks omitted).

Here, Norris' PCRA claim lacks underlying legal merit. First, over the defense's objection, the jury was given a written instruction on voluntary manslaughter. Norris himself stated to the trial court that he did not want the jury instructed on voluntary manslaughter. *See* Trial Transcript, 7/18/2017, at p. 58. At the PCRA court's evidentiary hearing, trial counsel explained that she had declined to argue a theory of voluntary manslaughter because she was concerned the jury would be confused by or skeptical of alternative theories and interpretations of the evidence. Counsel, therefore, decided to only advance a theory that served as a complete defense.

Based on our review of the record, we conclude that there was no underlying error in trial counsel's decision and there was a reasonable basis for not using the closing to argue for a finding of incomplete self-defense. The evidence did not support a finding of voluntary manslaughter, and counsel cannot be faulted for only advancing a complete defense on Norris' behalf. Thus, counsel was not ineffective, and the PCRA court did not err in denying relief on this claim.

Orders affirmed.

Judge McCaffery joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2022